\* MICHAEL S. VOUGHT ET AL. V. GEO. W. HOOKER ET AL.

1. DEEDS CONVEYING LAND BY METES AND BOUNDS—LIMITATION.

Where, in making surveys and deeds of his land, grantor conveyed to different parties different parcels out of a 250 acre tract of land, and in the last deed intended to and supposed he had conveyed all his remaining interest in said tract, but by reason of an erroneous survey said deeds, conforming thereto, left a tract of eight acres unconveyed, the grantees are not entitled to the unconveyed land, although some of the deeds did not convey in number of

---

\* The judgment for the heirs of Richard Hooker, Sr., was reversed by the Supreme Court, unreported, 52 Ohio St., 621, and judgment for plaintiffs in error, Carrie S. and George W. Hooker.

Assignments of error in Supreme Court:

1. Said court erred in overruling the motion of these plaintiffs in error, for a new trial, and to vacate and set aside the findings, judgment and decree, adverse to them, on each and all the causes, grounds and assignments in said motion stated.

2. That said conclusions of law as found by said court, and said judgment and decree, against these plaintiffs in error, and in favor of said defendants in error,

acres the quantity of acres expressed therein, and bordered on the eight acre tract unconveyed ; such land remains in the grantor and his heirs.

2. DEED WITH IMPERFECT DESCRIPTION CONVEYS EQUITABLE TITLE.

An imperfect description of land attempted to be conveyed in a deed by metes and bounds which does not inclose the premises sought to be conveyed, does not convey the legal title to the premises but gives the grantee an equitable title thereto.

APPEAL.

Finding of facts:

That prior to and in April, 1871, and on until May 20, 1872, said Richard Hooker, Sr., then in life, was the owner in fee and was in full possession of 250 acres of land in sections 21 and 28, township 15, range 19, about five miles from Lancaster, in Fairfield county and state of Ohio, and no more, and which 250 acres of land is fully and correctly shown by the plat and diagram thereof made by John N. Wolfe, surveyor, and which diagram is referred to as a part hereof, and is annexed to and made part of the bill of exceptions herein and marked exhibit "B" therein. That said diagram correctly sets forth the 100 acres of land on the south side thereof which said Richard Hooker, Sr., intended to sell and convey to said Samantha J. Trimble, his daughter, and which same said Samantha J. intended to sell and convey to said Voughts', and also correctly sets forth the eight acres in dispute herein, immediately north of said 100 acres, and also correctly sets forth the $2\frac{77}{100}$ acres in triangular form on the west part of said 250 acres, and immediately north of

to-wit : The heirs and widow of said Richard Hooker, Sr., deceased, are not sustained by the facts found, nor by sufficient evidence, and are contrary to law.

3. That said court erred in its conclusions of law, from the facts by it found, in finding, adjudging and decreeing said eight acres of land in dispute, to be the property of and owned in fee, by said defendants in error, the widow and heirs of said Richard Hooker, Sr., deceased.

4. That said court erred in its conclusions of law from the facts by it found, in not finding and refusing to find, said plaintiff in error, Carrie S. Hooker, the full, true and lawful owner in equity of said eight acres in dispute, and in not decreeing the same to her in fee simple, and in not reforming said deeds and conveyances accordingly.

5. That said conclusions of law, to-wit: That said Richard Hooker, Sr., died, seized in fee simple in both law and equity of said eight acres in dispute, and that said defendants in error, his heirs and widow, are the full owners thereof, and hold the full legal and equitable title thereto, are not sustained by the evidence in the case, and are not sustained by the facts found, and are contrary to the law of the case.

6. That the court erred in its conclusions of law from the facts by it found, that the deed by Richard Hooker, Sr., and wife, to George W. Hooker, dated June 20, 1879, was not contrary to the true meaning and intention of the parties thereto, and that there was no mistake or error therein, and that the same should not be reformed and corrected so as to conform to the true meaning and intention of said parties, and so as to include in said deed said eight acres in dispute in said action.

7. That said court erred in its findings of fact, and the same is not sustained by the evidence, to-wit: That said deed of Richard Hooker, Sr., and wife, to said George W. Hooker, dated June 20, 1879, and said deed of George W. Hooker and his trustee John D. Martin, to said Carrie S. Hooker, of the same land and description, made thereafter, were, and are according to the true meaning and intention of the parties thereto, and that no mistake or error was made therein, and that they and each of them should not be reformed and corrected.

8. That said court erred in its conclusions of law from the evidence and facts by it found, in refusing to find, adjudge and decree, and in not finding, adjudging and decreeing, the fair value of the rents and profits, use and occupation of said eight acres in dispute to these plaintiffs in error, according to their relative rights, and as shown by the facts found.

Fairfield Circuit Court.

said eight acres in dispute, and named in the pleadings herein, and also correctly sets forth the $43\frac{90}{100}$ acres sold and conveyed to said Carrie S. Hooker, lying on the north and western part of said 250 acres, and also correctly describes the $95\frac{29}{100}$ acres immediately north of said eight acres in dispute, and which $95\frac{29}{100}$ acres, and no more, are included within the description, metes and bounds contained in the deed of said Richard, Sr., and wife to George W. Hooker, dated June 20, 1879, but which deed purports to convey $98\frac{50}{100}$ acres. That the total quantity of land so described in said plat is in and about 250 acres. That said Richard, Sr., in 1871, and prior, and continually until his death on April 28, 1885, at the age of 86 years, was largely indebted. That plaintiffs, Voughts', claim said 100 acres and said eight acres in dispute. Said Carrie S. Hooker claims said $95\frac{29}{100}$ acres, said $2\frac{77}{100}$ acres, and said eight acres. The heirs of said Richard, Sr., claim said eight acres. That about April, 1871, Richard, Sr. agreed to sell and convey to George W. and Carrie S., 100 acres off of the south side of said lands, and therefor caused a survey to be made by one Levi Hartzler, county surveyor, intending and directing 100 acres, and no more, to be surveyed off, and Hartzler made such survey, and made and filed in his office an official plat thereof which is referred to as part hereof, and the same is annexed to and made part of the bill of exceptions herein, marked Exhibit "C" therein, but such sale was not effected. That prior and on May 20, 1872, Richard, Sr., agreed to and did sell and convey to Mrs. Trimble, his daughter, the same 100 acres, supposed to be surveyed off by Hartzler, and a true copy of such conveyance is referred to as part hereof, and the same is annexed to and made part of the bill of exceptions herein, and marked

9. That the said findings, judgments and decrees, in respect to said eight acres in dispute, were made in favor of said defendants in error, the widow and heirs of said Richard Hooker, Sr., deceased, when the same should have been for and in favor of these plaintiffs in error.

10. That divers other material error prejudicial to these plaintiffs in error, and in favor of said defendants in error, the widow and heirs of said Richard, Sr., deceased, are apparent in said record.

And these plaintiffs in error further say, that as matter of law they believe said plaintiffs in said cause below, and named as defendants herein, towit: Michael S. Vought, and Michael S. Vought as administrator of the estate of John S. Vought, deceased, are probably not proper or necessary parties herein, but they are made and joined herein, in abundance of caution, and that all parties having any interest, may be before this court, and these plaintiffs by so joining them waive no right or objection they might otherwise have and urge, and these plaintiffs in error make no objection or complaint to the findings, conclusions, judgment and decree against said Voughts, defendants herein.

These plaintiffs in error, therefore pray, that said findings and conclusions, judgment and decree, for, and in favor of said defendants in error, to-wit: The heirs and widow of said Richard Hooker, Sr., deceased, may be found unsustained and erroneous, and reversed, and that this court make such findings, conclusions, judgment and decrees, as said circuit court should have made, and they pray for such other and further order, findings and relief, as the law and equity may warrant.

S. A. Kistler, for plaintiff in error in Supreme Court, cited:

Boundary lines—Title: McAfferty v. Conover, 7 Ohio St., 99 [70 Am. Dec., 57]; Yetzer v. Thoman, 17 Ohio St., 130, 134 [91 Am. Dec., 122]; Hills v. Ludwig, 46 Ohio St., 373 [24 N. E Rep., 596].

Use and occupation, accounting, rents and profits: Section 5019, 5311, 5312, 5313, 5784, Rev. Stat.; Witte v. Lockwood, 39 Ohio St., 341; McKinney v. McKinney, 8 Ohio St., 423, 429; West v. Weyer, 46 Ohio St., 66, 70 [18 N. E. Rep., 537; 15 A. S. Rep., 552].

Possession in Law; Brumbaugh v. Chapman, 45 Ohio St., 368 [13 N. E. Rep., 584]; Clark v. Potter, 32 Ohio St., 49, 62; Humphries v. Huffiman, 33 Ohio St., 395, 403

Vought v. Hooker.

Exhibit "F" therein. That the western part of said land was much more valuable than that on the east; that said Mrs. Trimble and her grown sons took immediate possession of the supposed land. That for two years or more no division fence was made to separate the land sold from the residue of Richard, Sr., on the western part, and on the eastern, which was wet and swampy, no attention was paid to any line for several years. That two or three years thereafter, Richard, Sr., and the sons of Mrs. Trimble, staked off a line for a division fence on the supposed north boundary of the land deeded to Mrs. Trimble, and in so doing, they took the stone found at the northwest corner of said eight acres, which Richard, Sr., had shown Joseph Trimble, witness, prior to the sale to Mrs. Trimble and said it was the northwest corner of the 100 acres, and a mark found on the fence at the northeast corner thereof, near the canal, and staked off a line between such points, and soon thereafter Richard, Sr., had the west part of such fence made on such line, and some years after the sons of Mrs. Trimble made a fence on the east part of such line, and such line and fence was treated and regarded as the line between the land of Mrs. Trimble and residue of the land of Richard, Sr., until the dispute herein arose. That all parties concerned believe said line and fence to be upon the north boundary of said 100 acres. And there was no controversy or dispute as to where the true line was, and all concerned intended to build said fence upon and supposed it was built upon the true line and north boundary of said 100 acres sold to Mrs. Trimble. That on April 15, 1878, Richard, Sr., sold to said Carrie S. the $43\frac{90}{100}$ acres on the west part of the residue of his said lands, as indicated on said plat.

That prior to June, 1879, Richard, Sr., had 45 acres more of the residue of his land on the south side, and intended to join the 100 acres of Mrs. Trimble surveyed off by C. W. Borland, county surveyor, for sale to said Carrie S., and the line of said division fence was taken as the north line of said 100 acres, but no sale was made. That said George W. and Carrie S. were both familiar with the location of said 250 acres and the various tracts sold off, and the quantity intended to be sold in each. That prior and up to June 20, 1879, Richard, Sr., owned 106 acres of said original 250 acres. That prior to and on June 20, 1879, Richard, Sr., agreed with his son George W. and Carrie S. to sell and convey to his son George W. the whole residue of said lands at $85 per acre, and in the aggregate for $9,010. C. W. Borland, county surveyor, was called on to make the deed; he repaired to the premises, advised that a survey was unnecessary, that he could prepare the deed from former surveys, etc. And the same was made and delivered but without the words and figures now found therein to-wit: "Containing $98\frac{50}{100}$ acres, more or less," and no number of acres was named therein, but such deed was taken by Borland to his office at Lancaster and the computations made and said number of acres inserted, and the same left for record and which deed is referred to as a part hereof, and the same is made part of the bill of exceptions, marked Exhibit "J," that said eight acres in dispute was not included in said deed. Nor is the $2\frac{77}{100}$ acres in triangular form described or included therein. That George W. at once took possession of all the land Richard, Sr., had been in possession of immediately prior and including said $2\frac{77}{100}$ acres, and so did with the full knowledge and consent of said Richard and wife. That the grantors and grantee in the agreement of sale, purchase and conveyance on June 20, 1879, all meant and intended, that all the residue of said lands which

Richard, Sr., owned up to that time, thereby should be and was sold, purchased and conveyed, and they all believed and well knew, that he then owned in and about 106 acres, which quantity he did then in fact own, but none of them then knew or believed that any of such residue, lay south of such division fence, nor that said Richard, Sr., then owned the identical land constituting said eight acres, or that said eight acres was part of said 106 acres, but they all then believed that the full quantity of said residue of 106 acres lay north of said division fence and north of said eight acres. That said eight acres in dispute was and is a part of said residue of 106 acres, and Richard, Sr., on such sale and conveyance, did not mean or intend to retain or keep such a strip. That always after such conveyance Richard, Sr., and wife believed that they owned no part or interest in said land, and Richard, Sr., so uniformly declared and represented till his death. That said Carrie S., by her purchase and conveyance from said George W. and his trustee, J. D. Martin, has succeeded to and became the full owner of all the estate, legal and equitable, by reason of the sale and conveyance made on June 20, 1879, to said George W. That said Carrie S. paid all the purchase money and full value for the land conveyed and intended to be conveyed on June 20, 1879, and on her purchase thereof she at once took full possession and use of all said lands of which George W. and Richard, Sr., prior to him, had and exercised possession of, and which she believed to be one 106 acres, including said $2\frac{77}{100}$ acres. That prior and up to April 10, 1880, said Mrs. Trimble believed that she owned 100 acres and no more, and she then agreed with Michael S. and John S. Vought to sell and convey to them the same, estimated and paid for as one hundred acres, and said grantees Voughts then understood and believed that they were purchasing but one hundred acres and no more. And they and said Samantha J., then and for a long time after, and until the controversy arose in this action, fully understood and believed that all the land south of said division fence was 100 acres and no more, and said Voights', plaintiffs, in negotiation for the purchase of said land, were told by said Mrs. Trimble and her sons that there were just one hundred acres and no more. That the Voughts', plaintiffs, laid out and expended in the ditching and draining of said eight acres, in and about $50, and they have kept up the fences and received the full use of said land since April 10, 1880; and which use was of the fair value of $40 per year. That for about three years of such time George W. had the title to the lands conveyed, and intended to be conveyed, on June 20, 1879, and thereafter said Carrie S. had and owned the same so far as involves said eight acres. That Mrs. Trimble conveyed said lands to said Voughts by deed, containing the same description, metes and bounds as contained in the deed for the same land by Richard and wife to her. That said Voughts, shortly before the controversy in this case arose, on inspecting their deed to said land believed there was a mistake therein, and that they did not have 100 acres of land thereby, and were demanding a correction thereof from Mrs. Trimble, until they discovered by a survey that there were 108 acres south of said division fence, whereupon they claimed said 108 acres. That said Voughts', soon after the commencement of this litigation, made an effort to purchase and did in part purchase the supposed interest of some of the heirs of said Richard, Sr., in said eight acres, and secured conveyances in escrow therefor, and the court further finds, that neither the official survey and plat, as made by Levi Hartzler, nor the description in the deeds of Richard, Sr., and wife,

to said Samantha J., and of said Samantha J. to said plaintiffs, Voughts', by the metes, bounds, courses and distances therein, do by any known or reasonable mode or rule of computation of quantities, or forcing of balances, include or contain 100 acres of land, and not to exceed from about 80 acres to 94 or 95 acres. That said survey, field notes, plats, etc., by said Hartzler, do not agree, and the same with the description in said deeds to Trimble and the Voughts, are grossly unskillful and erroneous, and it is impracticable by any known rule of computation to ascertain any definite quantity of land therein, but that the purpose and intention of all the parties concerned, was to survey off and purchase 100 acres and no more from the south part of said land, bounded by a line nearly east and west on the north, and that said survey, descriptions and conveyances were all done and made in an honest effort to locate, describe and convey said one hundred acres and no more. That Richard, Sr., during his life, and the wife and widow of said Richard, and George W. and Carrie S., did not know or suppose that any part of said residue of 106 acres lay south of said division fence, but believed and supposed that it all lay north thereof, until shortly before the commencement of this action, whereupon said Carrie S., by said George W. and other servants, at once commenced the removal of said division fence to and upon the south line and boundary of said eight acres in dispute, being the north boundary of said 100 acres. That no certain or reliable stone is to be found on the west boundary at the end of the call of "north 8 and $\frac{78}{100}$ chains" in Trimble and Voughts' deeds, but a stone suitable for the purpose is found at the very point, but shallow in the ground. That the stone at the northwest corner of the eight acres in dispute corresponds to no call or distance in any of the surveys or deeds, not by many chains. That Richard, Sr., on and prior to June 20, 1879, and continuously until his death, was utterly insolvent with mortgage and judgment liens against him, and was considered and known by all who knew him to have no land and but little other property; which was exempted on his claim therefor.

And as conclusions of law the court finds: That said Samantha J. Trimble did not have, and that said plaintiffs hath not nor hath either of them, the legal or equitable title to said eight acres of land in dispute herein, nor any part thereof. That Samantha J. Trimble did not have and said plaintiffs Voughts', hath not, nor hath either of them, the legal title to the full 100 acres of land intended to be sold and conveyed to them by their said deeds. That said Samantha J. Trimble had and said plaintiffs, Voughts', had, and said Michael S. Vought now has, a good and equitable title to said 100 acres of land, bounded on the north by the south boundary of said eight acres in dispute herein.

That said Richard Hooker, Sr., died seized in fee of both the legal and equitable title of said eight acres of land in dispute herein, and that the same descended to and is now owned by his said heirs, subject to the dower of his widow therein and legal liens, etc.

And the court finds, that the deed and conveyance of said Richard, Sr., and wife to said George W. Hooker, dated June 20, 1879, and the subsequent conveyances therefrom and under, are not contrary to the true meaning and intention of all the parties thereto, and the court find no error or mistake therein, contrary to the true meaning and intention of said parties in respect to said eight acres in dispute herein.

And the court declines to make any findings, or decree or judgment in regard to the rents and profits, use and occupation of said eight

acres of land. And the court finds that in justice and equity said plaintiffs, Voughts', should pay their own costs therein, including costs heretofore adjudged against them in this case, and that the heirs of Richard Hooker, Sr., should pay the residue of the costs' herein.

Wherefore it is adjudged and decreed by the court here that said plaintiffs, Voughts', have no right, title, interest or estate, legal or equitable, in said eight acres of land in dispute in this action, and that all their pleadings, claims and demands therefor are dismissed at their costs, and that said Michael S. Vought, personally, and as administrator of the estate of John S. Vought, pay all the costs made by the plaintiffs herein, including the costs heretofore adjudged against said plaintiffs herein and in all taxed at $——, and execution is awarded to collect the same as provided by law.

And it is further adjudged and decreed that the cross-petition and the amendments thereto and of; and all other claims and demands in this action on appeal by Carrie S. Hooker and George W. Hooker, in respect to said eight acres in dispute herein, and the correction of their deeds so as to include the same, and in respect to rents and profits, use and occupation of said eight acres, are each and all found to be unsustained and are dismissed without costs. And it is further adjudged and decreed that said Richard, Sr., at the time of his death, was the owner in fee of said eight acres in dispute herein, and that upon his demise his said legal heirs became and now are the joint owners in fee thereof subject to the dower estate of his said widow, Phœbe Hooker, with other legal liens, and the said estate of said heirs therein, subject to the dower estate of said widow therein, is hereby adjudged and decreed to be and the same is quieted, and all parties herein are commanded and enjoined to in no way or manner disturb or interfere with the same or the ownership thereof; and upon considerations of justice and equity it is further ordered and decreed that the said heirs of said Richard Hooker, Sr., deceased, in equal proportions, pay all the costs of said defendants made in this case and not adjudged against plaintiffs taxed at $——, and execution is awarded according to law to collect the same. And thereupon at the time said plaintiffs, Voughts', and said cross-petitioners Carrie S. and George W. Hooker then and there excepted to all said findings of law and facts and to all said judgments and decrees adverse to them, and asked the same to be noted of record, and forty days was allowed in which to prepare and have bill of exceptions herein allowed, signed and sealed by said cross-petitioners, Carrie S. and George W. Hooker.

And on September 11, 1891, the following entry was put upon the journal, to-wit: Today came the parties with their attorneys, whereupon the motion of Carrie S. Hooker and George W. Hooker for a new trial and to vacate and set aside the findings, judgments and decrees herein, for the causes in said motion stated, came on to be heard and was argued by counsel. On consideration whereof the court found said motion not well taken, and overruled the same, to which ruling and opinions said defendants Carrie S. Hooker and George W. Hooker at the time excepted, and thereupon on their motion, time, to-wit: forty days in which to prepare and have allowed, signed and sealed their bill of exceptions in the above case was given and granted said Carrie S. Hooker and George W. Hooker, and the journal ordered kept open for such purpose.